## HAYES v. STANDARD WHOLESALE PHOSPHATE & ACID WORKS, Inc., et al.

### THE PICTON.

### THE CARL D. COLONNA.

#### No. 2957.

Circuit Court of Appeals, Fourth Circuit.

June 18, 1930.

Harry N. Abercrombie and J. Craig Mc-Lanahan, both of Baltimore, Md., for appellant.

George W. P. Whip, of Baltimore, Md. (Lord & Whip, of Baltimore, Md., on the brief), for appellee Standard Wholesale Phosphate & Acid Works, Inc.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., and T. H. Swank, of Baltimore, Md., on the brief), for appellees the Carl D. Colonna and Norfolk Lighterage Co., Inc.

Before NORTHCOTT, Circuit Judge, and BAKER and GRONER, District Judges.

GRONER, District Judge.

On the early morning of January 1, 1928, the tug Colonna, with a tow of five barges, left Baltimore for Hampton Roads. The wind was strong southwest, and storm signals had been shown since the day before. When about 6 or 8 miles below Baltimore harbor, and before reaching the broad waters of the bay, the stern barge in the tow parted her hawser, and went adrift. In an effort to anchor the other barges, in order to go to the assistance of the drifting barge, the tug went ahead too fast on the hawser of the barge Picton, and brought about a collision between that barge and another barge called Intrepid, doing minor damage to the Picton's guard rail above the water line. The tug towed the Picton to an anchorage, where a little later it was discovered she was making water too fast to be controlled by her own pumps, whereupon the tug returned, and towed her back to Baltimore, where part of her cargo was discharged several days later in damaged condition.

The single point for decision is the question whether the leak which caused the damage to the cargo was due to the collision, or to the unseaworthy condition of the barge. The learned District Judge, who saw and heard the witnesses, held that the barge was unseaworthy at the inception of the voyage, and since it cannot be denied that there is ample evidence to sustain his conclusion, we might rest our decision on the rule that in such a case we must affirm even if con-

vinced we might have reached a different conclusion as an original question, but here we have no need to invoke the rule, for a careful review of the whole case convinces us that the decision was plainly right.

The Picton was formerly a paddlewheel steamer used on the St. Lawrence river, and Lake Ontario. Her age is apparently unknown—or forgotten. About ten years before the event we are describing, she was brought down to Baltimore, and converted into a barge by encasing her metal hull in a wooden sheathing outside, and a plank ceiling inside. The steel hull had partly given way, and afforded in places no protection against leaks, and was useful only as a frame or carcass to which to fasten the timbers, and, to avoid leaks, it was as necessary in her case as in the case of a boat built entirely of wood to keep her bottom planking tight and well caulked. At the time of the collision with the other barge, the Picton had on board some 600 tons of acid phosphate, loaded about a week before the voyage began. Her master testified she was then making no more water than could easily be controlled by her pumps, and that about the time the tow was made up, his soundings showed about 7 inches, which for a round bottom boat was not excessive. Very shortly after the collision, she began to make water, and some half an hour later showed 17 inches, and a steady increase beyond control of her pumps. This condition, unexplained, would lead inevitably to the conclusion that the damage, and its consequences, was the result of the collision; but the evidence, in our opinion, clearly confutes this, for it satisfactorily shows not only that the damage and all the damage sustained when the two barges collided was well above the Picton's water line, hence could not have been the conduit through which the water entered, and this is confirmed by the fact that the cargo was dry and undamaged except on and near the bottom of the barge, while, on the other hand, an examination of her bottom, when she was hauled on the ways, showed a break in the sheathing of the wood hull 2 inches wide and 12 inches long running along the after part of the keel and capable of admitting water in large quantities through the iron hull, if, as appellant's own witness Lawrence admits was a fact, there was an entrance through the iron into the barge. If more be needed, there was also evidence that the joints or butts in her bottom planking were not tight, and in places the oakum filling was soft, and finally that for a long time her history had shown a disposition on her part to leak when loaded.

As against all of this, the only other thing which requires explanation is her failure to take in water after loading and while waiting her place in the tow, and the explanation of this necessarily involves an element of conjecture, but even this is to some degree simplified by the additional fact that while at the dock after the accident, she leaked at times badly, and at other times hardly at all. We think the explanation is that the openings in her bottom were accentuated by the rough weather which she encountered in the early stage of the voyage, and that the subsequent temporary relief was the result of accumulation of foreign matter in the openings which, while it remained, impeded the inflow of water, but whether this conjecture be wholly satisfactory or not is really beside the question for the reason that on the testimony as a whole, giving full effect to the presumption in favor of seaworthiness, we are constrained to conclude that the undoubted weight of the evidence shows inherent structural defects quite capable of causing all the damage done. On the other hand, it satisfactorily shows that the damage from the collision was not of a character to cause or contribute to this result, and in this conjuncture only one conclusion is possible.

Hence it follows that the decrees of the District Court should be and are affirmed.

Affirmed.